Jonathan Shub (CA Bar No. 237708)
Kevin Laukaitis
**SHUB LAW FIRM LLC**
134 Kings Hwy E Fl 2
Haddonfield, NJ 08033
T: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Attorneys for Plaintiff and the Proposed Class*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Quintessa Louis, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Simply Orange Juice Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff, by attorneys, alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Simply Orange Juice Company ("defendant") manufactures, distributes, markets, labels and sells almondmilk with representations including "Vanilla Almondmilk," "Simply Made," "All Natural," and "Vanilla," with pictures of three almonds, a cured vanilla bean and a vanilla flower under the "Simply" brand ("Product").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15





16    2.    Defendant's Vanilla Almondmilk is part of a product line which includes Original

17 and Unsweetened Almondmilk.



18
19
20
21
22
23
24
25
26
27
28



2

3.      Though reasonable consumers will expect the Product to be "all natural" and have a non-negligible amount of vanilla, it is not all natural and contains a trace, if any, of extracts from vanilla beans.

**I.      VANILLA BEANS ARE NATURAL VANILLA FLAVOR**

4.      The vanilla bean comes from the vanilla orchid, grown in tropical climates such as Madagascar.



5.      The vanilla flower produces green vanilla beans.



6.      The beans develop their unique flavor from being cured in the tropical sun.



**CLASS ACTION COMPLAINT**

7.      The flavoring principles of vanilla beans are extracted through alcohol.

<u>Beginning</u>                    <u>Middle</u>                    <u>End</u>



8.      The color of the alcohol gradually changes to reflect the release of the millions of black seeds inside the vanilla beans, which contain the flavoring compounds.



9.      While vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla flavor, it only contributes about one-third of its flavor and aroma.

10.      The chemical production of vanillin in the late 19th century resulted in foods purporting to contain natural vanilla, but that contained no vanilla or a trace amount, boosted by low cost, synthetic vanillin.

11.      Most of the flavor of vanilla beans comes from over two hundred odor-active

**CLASS ACTION COMPLAINT**

compounds, including acids, ethers, alcohols, acetals, heterocyclics, phenolics, esters and carbonyls.

12.     These non-vanillin compounds are essential to what consumers expect from vanilla beans, and are only provided together in extracts of vanilla beans.

13.     Methyl cinnamate and cinnamyl alcohol provide a cinnamon and creamy note.

14.     Acetovanillone provides a sweet, honey taste.

15.     P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

16.     4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral notes.

## II.     CONSUMERS ARE ACCUSTOMED TO TRUTHFUL LABELING

17.     Consumers are accustomed to truthful labeling which tells them the source of a product's flavor.

18.     California's Sherman Law and the Food and Drug Administration ("FDA") have identical requirements for disclosing the source of a food's flavor. *See* 21 C.F.R. § 101.22(i).

19.     A natural flavor is defined as made from a natural source and through a natural process. 21 C.F.R. § 101.22(a)(3).

20.     An artificial flavor is made from an artificial source or through a non-natural process. 21 C.F.R. § 101.22(a)(1).

21.     For example, beverages may have pictures of vanilla beans, but they are truthfully labeled as "Artificially Flavored." *See* 21 C.F.R. § 101.22(i)(2).

**CLASS ACTION COMPLAINT**



22.    According to studies, vanilla products labeled as "artificially flavored" cost an average of $0.04 per ounce less than those without this designation, across product types.

23.    This is based on consumer willingness to pay more money for vanilla products which are naturally flavored by vanilla beans.

## III.    THE "VANILLA" REPRESENTATIONS ARE FALSE AND MISLEADING

24.    Consumers who view the representations of a cured vanilla bean and vanilla flower, "Vanilla," "All Natural," "Simply" and "Vanilla Almondmilk," will expect (1) the predominant or exclusive source of the vanilla taste will be from extracts from vanilla beans, (2) the Product contains an appreciable amount of extracts from vanilla beans and (3) the flavor is only from natural sources.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




25.     These representations – and a general expectation that a food will truthfully disclose whether it is "Artificially Flavored" – assures consumers that the Simply Vanilla Almondmilk has a non-negligible amount of extracts from vanilla beans.

26.      A non-negligible amount of extract from vanilla beans is an amount sufficient such that a vanilla taste does not need to be boosted by synthetic flavoring.

27.     "Simply" is defined "without ambiguity," and placed on the label between "Vanilla" and "Almond."

28.     If Plaintiff and reasonable consumers scrutinized the ingredient list, they would see "Almonds" and "Vanilla Extract," and would be (falsely) assured that the Product contained a non-*de minimis* amount of extracts from vanilla beans.

**CLASS ACTION COMPLAINT**

**INGREDIENTS:** ALMONDMILK (FILTERED WATER, ALMONDS), CANE SUGAR, NATURAL FLAVORS, SEA SALT, VANILLA EXTRACT.

29.     However, the amount of extracts from vanilla beans is negligible, and most of the "vanilla" taste comes from the "NATURAL FLAVORS" ingredient.

30.     This conclusion is based on several facts.

31.     First, "NATURAL FLAVORS" is listed ahead of "VANILLA EXTRACT," which means the Product contains *more* of this ingredient, since ingredients are listed in order of predominance by weight.

32.     Second, vanilla extract consists of extractives of vanilla beans in a solution of at least thirty-five percent alcohol.

33.     The flavoring constituents make up two to three percent of this total.

34.     Therefore, the amount of this ingredient, by weight, will be disproportional to its flavoring constituents.

35.     A "natural flavors" ingredient, on the other hand, is a highly concentrated blend of potent flavoring compounds, and is delivered via a carrier solution with significantly less liquid than vanilla extract is.

36.     If the Product had a non-negligible amount of extractives from vanilla beans, "VANILLA EXTRACT" would precede "NATURAL FLAVORS" on the ingredient list.

37.     Listing "NATURAL FLAVORS" before "VANILLA EXTRACT" is a tacit admission that the amount of extractives from vanilla beans is *de minimis* and negligible.

38.     Third, analytical testing of the Product in 2020 and/or 2021 confirmed that the Product's "vanilla bean" taste is not from vanilla beans or even non-vanilla bean, natural flavors,

but artificial flavors.

39.     In isolating key vanilla bean compounds, the amount of vanillin was disproportionately greater than if it was present only from vanilla beans.

40.     The vanillin was unaccompanied by expected amounts of key aromatic and marker compounds – methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, 4-methoxybenzaldehyde (p-anisaldehyde) and/or 4-methoxybenzyl alcohol (p-anisyl alcohol).

41.     Third, guaiacol was detected at atypically elevated levels, not explained by relation to any other compounds.

42.     Guaiacol is the source of 85% of artificial vanillin.

43.     The detection of guaiacol is considered a "fingerprint" of artificial vanilla.[1]

44.     Guaiacol is a petrochemical precursor, obtained from synthetic benzene and propylene, whose industrial source is petroleum.

45.     Guaiacol is converted to vanillin through chemical reactions, condensation with glyoxylic acid, decarboxylation and the use of chemical catalysts, including sodium hydroxide and sodium chloride.

46.     Vanillin made from guaiacol is an artificial flavor because guaiacol is an artificial source, and it is made through non-natural processes. *See* 21 C.F.R. § 101.22(a)(1).

47.     The ingredient list is misleading, because Defendant is required to identify this flavoring by its specific name, "vanillin" or "artificial flavor."

48.     The analysis revealed the presence of vanillin propylene glycol acetal, a substitute for vanillin derived from guaiacol, and recognized as an "Artificial" flavor.[2]

---

[1] A.G. Huesgen, Analysis of natural and artificial vanilla preparations, Agilent Technologies, Inc.
[2] Vanillin PG Acetal, Perfumer & Flavorist.

**CLASS ACTION COMPLAINT**

# Vanillin PG acetal

The color, particle size or some other physical p

Request a Sample

## Organoleptic Characteristics

- Creamy
- Sweet

**Natural Status:**
Artificial

49.     Piperonal (heliotropine), recognized by the FDA as an artificial flavoring, and not found in vanilla, was detected. *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").

50.     Piperonal is not found in vanilla and is used to contribute a "powdery" note.

51.     While piperonal can be from a natural source, the piperonal here is from an artificial source, because it was detected at levels several times higher than if a natural source was used.

52.     Artificial piperonal is made from benzene, a byproduct of petroleum processing, and a highly toxic carcinogen that causes leukemia.

## IV.     THE DESCRIPTION AS "ALL NATURAL" IS MISLEADING

53.     A sticker on the top of the Product describes it as "ALL NATURAL."




54.      Consumers increasingly value and will pay higher prices for products described as "natural."

55.      In 2015, sales of natural products grew almost ten percent to $180 billion.

56.      Federal agencies have issued guidance on the term "natural," so companies will not use it in a way that misleads consumers.

57.      The Food and Drug Administration ("FDA") defines "natural" to mean nothing artificial or synthetic has been included in or added to a food that is not expected.

58.      The Federal Trade Commission ("FTC") advises that companies must anticipate how reasonable consumers will understand the word "natural."

59.      If "reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact."

60.      One study concluded that the "vast majority of respondents stated a belief that 'natural' signals no artificial flavors, colors and/or preservatives."

61.     Surveys show that "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial [or synthetic] ingredients" and flavor.

62.     Another study showed that, "The vast majority of respondents stated a belief that 'natural' signals no artificial flavors, colors and/or preservatives."

63.     Seventy percent of consumers avoid artificial flavors and ingredients because they are linked to negative health, nutrition, and environmental effects.

64.     Consumers viewing the representations of "Vanilla," "Vanilla Almondmilk," "Simply," and picture of vanilla bean and vanilla flower expect that "All Natural" means the Product's vanilla taste is *all* from vanilla beans.

65.     However, the vanilla taste is admittedly not *all* from vanilla beans, based on the ingredient listing of "NATURAL FLAVORS."

66.     The representation as "All Natural" is misleading to consumers because the Product contains artificial flavoring from synthetic sources.

67.     Should Defendant claim that its "NATURAL FLAVORS" contain vanilla flavor from non-synthetic, yet non-vanilla sources, the front label would still be misleading because the only natural vanilla flavor – and natural vanillin – is from vanilla beans.

68.     In correspondence with vanilla suppliers, the FDA cautioned that the word "natural" has additional meaning to consumers when used in the context of products with a characterizing flavor of vanilla.

69.     Specifically, when consumers see a product with a characterizing flavor of vanilla described as "[all] natural," they will expect *all* the flavoring to be a natural vanilla flavor."

70.     However, because the Product's characterizing flavor is vanilla and "the flavoring was not derived from vanilla…[it] must be identified as 'artificially flavored.'" *See* Letter from Margaret-Hanna Emerick, FDA, to Richard Brownell, February 25, 2016.

71.     Even if a reasonable consumer reviewed the ingredient list, they would not know that the "All Natural" statement is not true, because the product contains artificial flavors from synthetic sources.

72.     Although the flavoring used to simulate the Product's characterizing vanilla flavor is

(1) not from vanilla beans, (2) from artificial petrochemical sources and (3) made through artificial processes, Defendant pretends otherwise, conflating natural and artificial flavoring and deceiving consumers.

73.     Consumers at the point-of-sale are unable to verify whether a vanilla product is natural flavored – exclusively or predominantly from the vanilla beans on the label.

74.     Because the Product contains artificial flavor – vanillin and piperonal – that "simulates, resembles or reinforces the characterizing flavor," the front label is required to, but omits, that it is "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

75.     Defendant knows consumers will pay more for the Product because its representations include pictures of vanilla, "Vanilla," "All Natural," and omits that it is artificially flavored.

76.     The Product lacks an authentic vanilla taste because of the absence of the critical odor-active compounds in vanilla.

77.     The added vanillin, from an *artificial* source, gives the Product a "sweet, creamy" taste, which is distinct from the multifaceted taste of the natural flavor of vanilla.

78.     The addition of more natural vanilla flavor to the Product in place of artificial flavor would cost approximately $ 0.15 per 46 oz, a *de minimis* increase in cost, especially considered the premium price of the Product compared to similar products.

V.     **RELIANCE AND ECONOMIC INJURY**

79.     Plaintiff saw and relied on the label, which misleadingly states, "All Natural," "Simply," "Vanilla," "Vanilla Almondmilk," and has pictures of vanilla.

80.     Plaintiff sought to purchase a product with a materially greater amount of natural vanilla flavor from vanilla beans than was present.

81.     Plaintiff sought to purchase a product with only flavors from natural, non-synthetic sources.

82.     Plaintiff sought to purchase a product with without synthetic and artificial flavor ingredients.

83.     Plaintiff expected that most or all the vanilla taste would be from natural vanilla.

**CLASS ACTION COMPLAINT**

84.     Plaintiff did not expect the vanilla taste to be provided mostly, or all, by artificial flavoring from artificial sources.

85.     Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

86.     The Product costs more than similar products without misleading representations and but for the misleading representations, would have cost less.

87.     Plaintiff paid more for the Product than she otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

88.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.99 per 46 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## INTRADISTRICT ASSIGNMENT

89.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims arose in Contra Costa County, and this action should be assigned to the Oakland or San Francisco Division.

## PARTIES

90.     Plaintiff Quintessa Louis is a resident of Concord, Contra Costa County, California.

91.     During the relevant statutes of limitations for each cause of action, including between July and August 2020, Plaintiff purchased the Product for personal and household consumption and use, in reliance on the representations.

92.     Plaintiff understood "All Natural" to mean all or most of the Product's vanilla flavor was from natural vanilla and that it only contained flavors from natural sources.

93.     Plaintiff expected that at least most of the Product's flavor would be from extracts from vanilla beans.

94.     Plaintiff did not expect the Product to be artificially flavored, because the front label did not disclose this.

95.     Plaintiff expected that if the Product contained non-vanilla flavors, they would be

from non-synthetic, natural sources.

96.     Plaintiff understood the "Naturally Flavored" statement to mean the Product did not contain any artificial or synthetic flavoring.

97.     Plaintiff purchased the Product at stores including Safeway, 2600 Willow Pass Rd Concord, CA 94519.

98.     Plaintiff tries to consume natural foods that are flavored only or mainly by their characterizing ingredients, or at a minimum, only with natural flavors, and avoids synthetic and artificial flavor ingredients as much as possible.

99.     Plaintiff expected more than a vanilla taste, but natural vanilla from vanilla beans.

100.    Plaintiff would buy the Product again if assured it was flavored mainly by the natural flavor of vanilla instead of synthetic flavoring.

101.    Defendant Simply Orange Juice Company, is a Florida corporation with a principal place of business in Atlanta, Fulton County, Georgia.

102.    Defendant sells premium fruit and vegetable juices under the "Simply" brand.

103.    Defendant is a subsidiary of The Coca Cola Company, the largest seller of beverages in the world.

104.    Defendant sells several varieties of the "Simply" almondmilk – original, unsweetened, vanilla and unsweetened vanilla.

105.    The Product is sold in bottles of 46 ounces.

106.    The Simply Vanilla Almondmilk is sold in grocery stores, convenience stores, drug stores, big box stores and available online throughout California.

## JURISDICTION AND VENUE

107.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)(A).

108.    Plaintiff Quintessa Louis seeks to represent a class of plaintiffs consisting of California purchasers of the Product.

109.    Defendant is a Georgia citizen because it has its principal place of business, in Georgia.

110. The parties are citizens of different states.

111. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

112. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District – the purchases of Plaintiff and her awareness of the representations and omissions identified here.

113. This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within California.

## CLASS ACTION ALLEGATIONS

114. Plaintiff brings this action pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2) and (b)(3).

115. Plaintiff seeks to represent all persons who purchased the Product for personal or household consumption and use since June 10, 2015, residing in California (the "Class" or "California Class").

116. The Class consists of thousands of persons, and joinder is impracticable.

117. Common questions of law or fact predominate and include whether defendant's representations and omissions were and are misleading and if plaintiff and class members are entitled to injunctive relief and damages.

118. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and omissions.

119. Plaintiff is an adequate representative because her interests do not conflict with other members.

120. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

121. A class action is superior to other available methods for adjudication of this controversy, since individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

**CLASS ACTION COMPLAINT**

122.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

123.    Plaintiff seeks certification of a class for injunctive relief under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class.

124.    Plaintiff seeks certification of a class under Rule 23(b)(3) because common issues predominate over questions affecting individual members and Defendant has acted or refused to act on grounds that apply generally to the Class.

125.    Plaintiff anticipates that this Court can direct notice to the Class, by publication in major media outlets and the Internet.

## FIRST CLAIM
## (CALIFORNIA CLASS)
**(Violation of California Business & Professions Code §§ 17200 *et seq.* – Unlawful Conduct Prong of the UCL)**

126.    Plaintiff incorporates all preceding paragraphs.

127.    California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

128.    Defendant's representations and omissions are "unlawful" because they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

1.  21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

2.  21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

3.  21 C.F.R. § 101.18(b), which prohibits true statements about food ingredients and descriptions that are misleading in light of the presence of other ingredients;

4.  21 C.F.R. § 101.22, which provides requirements to truthfully identify and disclose the source of a food or beverage's characterizing flavor; and

**CLASS ACTION COMPLAINT**

5. 21 C.F.R. § 102.5, which prohibits misleading common or usual names.

129. Defendant's conduct is "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA").

130. Defendant's conduct violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including:

1. Section 110100 (adopting all FDA regulations as state regulations);

2. Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

3. Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

4. Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

5. Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

6. Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

7. Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

131. Each of the challenged statements made and actions taken by Defendant violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

**CLASS ACTION COMPLAINT**

132.    Defendant leveraged its deception to induce Plaintiff and class members to purchase a product that was of lesser value and quality than advertised.

133.    Defendant's deceptive advertising caused Plaintiff and class members to suffer injury-in-fact and to lose money or property.

134.    Defendant's actions denied Plaintiff and class members the benefit of the bargain when they decided to purchase the Product instead of other products that are less expensive and contain virtually the same or immaterially different amounts of natural vanilla flavor.

135.    Had Plaintiff and class members been aware of Defendant's false and misleading advertising, they would not have purchased the Product at all, or would have paid less than they did.

136.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

137.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through such acts.

**SECOND CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200, *et seq*. –**
**Unfair and Fraudulent Conduct Prong of the UCL)**

138.    Plaintiff incorporates all preceding paragraphs.

139.    California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

140.    The false and misleading representations of the Product constitutes "unfair" business acts and practices because it is immoral, unscrupulous, and offends public policy.

141.    The gravity of the conduct outweighs any conceivable benefit.

142.    The representations and omissions constitute "fraudulent" business acts and practices because they are false and misleading to Plaintiff and class members.

143.    Defendant's representations and omissions are likely to deceive Plaintiff and Class Members about the absolute and relative amounts of natural vanilla flavor and natural flavors.

144.    Defendant knew or reasonably should have known that its statements and omissions

19

concerning the Product were likely to deceive consumers.

145.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

146.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

### THIRD CLAIM
### (ON BEHALF OF THE CALIFORNIA CLASS)
**(Violation of California Business & Professions Code §§ 17500, *et seq.* –
False and Misleading Advertising)**

147.    Plaintiff incorporates all preceding paragraphs.

148.    California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

149.    Defendant makes "false [and] misleading advertising claim[s]," by deceiving consumers as to the absolute and relative amounts of vanilla and natural ingredients in the Product.

150.    In reliance on these false and misleading advertising claims, Plaintiff and class members purchased and consumed the Product without the knowledge it contained a *de minimis* amount of natural vanilla and a substantial amount of non-vanilla flavors, including from synthetic sources.

151.    Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

152.    As a result, Plaintiff and class members are entitled to injunctive and equitable relief, restitution, and an seek an order for the disgorgement of the funds by which Defendant was unjustly enriched.

### FOURTH CLAIM
### Unjust Enrichment

153.    Plaintiff incorporates all preceding paragraphs.

154.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek

20

1  restitution and disgorgement of inequitably obtained profits.

2  <u>**JURY DEMAND AND PRAYER FOR RELIEF**</u>

3      Plaintiff demands a jury trial on all causes of action so triable.

4      WHEREFORE, Plaintiff, on behalf of herself and members of the proposed class, prays for

5  judgment and relief on all of the legal claims as follows:

6      A.    Certification of the Class, certifying Plaintiff as representative of the Class, and

7          designating Plaintiff's counsel as counsel for the Class;

8      B.    A declaration that Defendant has committed the violations alleged herein;

9      C.    For restitution and disgorgement pursuant to, without limitation, the California

10         Business & Professions Code §§ 17200, et seq.;

11     D.    For declaratory and injunctive relief pursuant to, without limitation, the California

12         Business & Professions Code §§ 17200, *et seq*. and 17500, *et seq.*;

13     E.    For punitive damages;

14     F.    For interest at the legal rate on the foregoing sums;

15     G.    For attorneys' fees;

16     H.    For costs of suit incurred; and

17     I.    For such further relief as this Court may deem just and proper.

18

19 Dated:   June 15, 2021

                                       Respectfully submitted,

20

                                       /s/ Jonathan Shub

21                                        Jonathan Shub (CA Bar No. 237708)

                                       Kevin Laukaitis*

22                                        **SHUB LAW FIRM LLC**

23                                        134 Kings Hwy E Fl 2

                                       Haddonfield, NJ 08033

24                                        T: (856) 772-7200

                                       jshub@shublawyers.com

25                                        klaukaitis@shublawyers.com

26                                        **SHEEHAN & ASSOCIATES, P.C.**

                                       Spencer Sheehan*

27                                        60 Cuttermill Rd Ste 409

                                       Great Neck, NY 11021

28                                        T: (516) 268-7080

F: (516) 234-7800
spencer@spencersheehan.com

*Pro Hac Vice* Application Granted,
Pending or Forthcoming

**CLASS ACTION COMPLAINT**